CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 16 2008
JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL W. KINARD, | ) |
| Petitioner, | ) Case No. 7:07-cv-00601 |
| v. | ) **MEMORANDUM OPINION** |
| TERRY O'BRIEN, | ) |
| Respondent. | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |

Petitioner Daniel W. Kinard, a federal inmate proceeding pro se, brings this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. In his petition, Kinard challenges the interpretation of the District of Columbia Good Time Credits Act[1] by the Bureau of Prisons ("BOP"). Respondent filed a motion to dismiss or, in the alternative, a motion for summary judgment to which Kinard filed a timely response, thus, making the matter ripe for consideration.[2] For the reasons outlined below, I find that Kinard's claims lack merit and conclude that the motion for summary judgment must be granted.

I.

Subsequent to pleas of guilty, on February 26, 1992, Kinard was sentenced by the Superior Court of the District of Columbia to a 10 to 30-year term of imprisonment for one count of Armed Robbery, as well as a 5 to 15-year term of imprisonment for a second count of Armed Robbery. The terms were ordered to be served consecutively, which resulted in a 15-year minimum term, with a

---

[1] The District of Columbia Good Time Credits Act of 1986, effective April 11, 1987 (D.C. Law 6-218; D.C. Code § 24-428), was repealed by the Omnibus Criminal Justice Reform Amendment Act of 1994, effective August 20, 1994 (D.C. Law 10-151; D.C. Code § 24-428).

[2] As respondent attaches a declaration of a Correspondence Specialist at the Designation and Sentence Computation Center and corresponding supporting sentencing records, and relies on these documents in his motion, I must construe and address the motion as one seeking summary judgment. Fed. R. Civ. P. 12(b) and (56).

five-year mandatory minimum, and a 45-year maximum term. Subsequent to a jury trial, on August 5, 1992, Kinard was sentenced to an additional term of imprisonment.[3] This term was amended on February 24, 1994, to 5 years to life for Armed Robbery, 20 years to life for Murder I while armed, 5 to 15 years for Possession of a Firearm During a Crime of Violence, and 1 year for Carrying a Pistol Without a License.[4] All counts ran consecutive except the count for Possession of a Firearm During a Crime of Violence. That count ran concurrent to all the other counts and to any other sentence. This resulted in a 25-year[5] and 4-month minimum term[6], with a 25-year mandatory minimum, and life as the maximum term. Thus, Kinard's two District of Columbia sentences comprise an aggregated sentence of 40 years and 4 months to life imprisonment, with an aggregated 30-year mandatory minimum term and an aggregated maximum term of life.

Kinard's sentence computation reflects 948 days of jail credit time[7] as the earliest date of offense was July 21, 1989, Kinard was arrested on July 23, 1989, and his sentence commenced on

---

[3] Kindard's original term of imprisonment was 5 years to life for Armed Robbery, 15 years to life for Attempted Robbery While Armed, 20 years to life for Murder II While Armed, 5 to 15 years for Possession of a Firearm During a Crime of Violence, 1 year for Carrying a Pistol Without a License, and 15 years to life for Murder I While Armed. All counts were concurrent to the Murder I While Armed count, except the Armed Robbery and the Carrying a Pistol Without a License counts. All counts were consecutive to any other sentence being served.

[4] Respondent does not attempt to explain why Kinard's term of imprisonment was amended. Kinard states, however, that, subsequent to a direct appeal, the Murder II While Armed conviction and the Attempted Robbery conviction were both vacated.

[5] Respondent indicates that this resulted in a 26 year and 4-month mandatory minimum term; however, this appears to be typographical error.

[6] D.C. Code § 24-408, formerly codified as D.C. Code 1981 § 24-208, provides "that in the case of a prisoner convicted of an offense other than a felony, . . . the prisoner may not be paroled until he has served one-third of the sentence imposed." Accordingly, the minimum term of Kinard's 1-year sentence for Carrying a Pistol Without a License, a misdemeanor offense, is 4 months.

[7] Kinard's maximum term is not reduced by the jail credit time as a life sentenced was imposed. Program Statement ("P.S.") 5880.32, District of Columbia Sentence Computation Manual, Section 52.10 indicates that, in this situation, jail credit time is deducted from the minimum sentence to determine parole eligibility.

the date the first sentence was imposed, February 26, 1992. Moreover, as will be explained more fully below, Kinard is currently receiving 1,240 days of Institutional Good Time Credits under the provisions of the District of Columbia Good Time Credits Act, § 24-428. Accordingly, Kinard is currently eligible for parole on June 29, 2026. However, Kinard's full term release date, the date on which he will complete serving his sentence with consideration for good time, is identified as life.

## II.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). I must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## III.

In the present action, Kinard argues that the BOP's interpretation of the District of Columbia Good Time Credits Act is incorrect. Specifically, Kinard challenges the BOP's calculation of his Institutional, Educational, Meritorious, and Statutory Good Time Credits. He seeks the award of

2,170 Days of Institutional Good Time Credits; 253 days of Educational Good Time Credits; 302 days of Meritorious Good Time Credits; and 2,189 days of Statutory Good Time Credits. Respondent contends that Kinard's Good Time has been appropriately awarded and I agree.

## A. Institutional Good Time Credits

Kinard requests 2,170 days of Institutional Good Time Credits; however, pursuant to various statutory restrictions and the relevant BOP Program Statement, he is only eligible to receive 1,240 days of Institutional Good Time Credits.

A person convicted of a violation under the District of Columbia Code "whose conduct is in conformity with applicable institutional rules is entitled to institutional good time credits." D.C. Code § 24-428(a) (repealed). Section 24-428 further provides:

> Application of good time credits shall commence on the 1st day of the person's commitment, as follows . . .
>
> (5) Ten days for each month, if the sentence is 10 years or more.
>
> (6) When 2 or more consecutive sentences are to be served, the aggregate of the several sentences shall be the basis upon which the good time credits shall be applied.
>
> (b) Good time credits . . . shall be applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date on which his release on parole becomes mandatory.

Id. Institutional Good Time Credits under D.C. § 24-428, however, are not applied to a maximum term of life imprisonment. Glascoe v. United States, 358 F.3d 967 (C.A.D.C. 2004) (finding that the District of Columbia Good Time Credits Act section providing for application of good time credits to prisoner's maximum term of imprisonment did not apply to a maximum term of life imprisonment). As petitioner's maximum term is life imprisonment, his maximum sentence is not reduced by Institutional Good Time Credits.

- 4 -

At first glance, it appears that Kinard's Institutional Good Time Credits should be applied to his minimum term of imprisonment; however, pursuant to D.C. Code § 24-434 (repealed) (currently codified as D.C. Code § 24-221.06), "[i]nstitutional and educational good time credits shall not be applied to the minimum terms of persons sentenced under §§ 22-3202, 33-501, 33-541, 22-2404(b), or § 22-3204(b)." Kinard was convicted of three counts of Armed Robbery, Murder I While Armed, and Possession of a Firearm During a Crime of Violence, and was sentenced, accordingly, pursuant to §§ 22-3202 and 22-3204(b), both of which are referenced in § 24-434.[8] Thus, pursuant to D.C. Code § 24-434, Kinard's Institutional and Educations Good Time Credits do not reduce his minimum term of imprisonment.[9, 10]

However, although somewhat contrary to D.C. Code § 24-434, pursuant to P.S. 5880.32, Section 52.17(b), the BOP continues in the tradition of the D.C. Department of Corrections and

---

[8] I note that Kinard was sentenced for the Carrying a Pistol Without a License conviction pursuant to § 22-3204(a), not § 22-3204(b), as respondent suggests.

[9] Kinard contends that § 24-434 does not apply to him because it did not originally reference § 22-3204(b) and, thus, violates Ex Post Facto Clause of the Constitution. Respondent inexplicably fails to address this claim. Regardless, I note that the Ex Post Facto Clause is violated when: (1) a law is applied to events occurring before its enactment, and (2) its application disadvantages the offender affected by it. U.S. Const. art. 1, § 9, cl. 3. Section 24-434 was originally effective April 11, 1987, well before Kinard's July 21, 1989 offense date, but did not originally include a reference to § 22-3204(b). D.C. Law 8-57; however, added "22-2404(b), or § 22-3204(b)" to the text of § 22-434. Law 8-57 was introduced in Council and assigned Bill No. 8-303, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on June 27, 1989 and July 11, 1989, respectively. Signed by the Mayor on July 27, 1989, it was assigned Act No. 8-71 and transmitted to both Houses of Congress for its review. While the amendment date is indeed subsequent to Kinard's offense date, Kinard ignores the fact that he was also sentenced under § 22-3202, which was included in the original § 24-434 enactment and was effective on April 11, 1987, prior to his July 21, 1989 offense date. Accordingly, because § 24-434 references the relevant sentencing statutes in the disjunctive and Kinard was sentenced under § 22-3202, the accompanying restrictions are applicable to Kinard's sentence and do not violate the Ex Post Facto Clause of the Constitution.

[10] In his response to the motion for summary judgment, Kinard contends, for the first time, that the Good Time Credits Act "repeals the mandatory twenty year minimum sentence required by D.C. Code § 22-2404" and contends that he is, therefore, entitled to institutional good time credits. (Mem. Supp. Resp. at 1.) I find that this claim lacks merit and must be dismissed. See Poole v. Kelly, 954 F.2d 760, 763 (C.A.D.C. 1992) (finding that the District of Columbia Good Time Credits Act did not supersede provision of statute providing for 20-year minimum year period of incarceration prior to parole eligibility for persons convicted of first-degree murder, D.C. Code § 22-2404).

allows an inmate whose minimum term of imprisonment exceeds the mandatory minimum term of imprisonment to receive Institutional Good Time Credits for the difference between the date the mandatory minimum term expires and the date the total minimum term expires. In Kinard's case, the mandatory minimum term of 30 years imprisonment is subtracted from the total minimum term of 40 years and 4 months imprisonment. This results in a residual term of 10 years and 4 months (124 months); thus Kinard is eligible to receive 1,240 days of Institutional Good Time Credit.[11] Accordingly, Kinard's parole eligibility date has been appropriately reduced by 1,240 days. Therefore, Kinard's claim that he is eligible to receive 2,170 days of Institutional Good Time Credit is without merit and I must grant the motion for summary judgment as to this claim.

## B. Educational Good Time Credits

Kinard seeks a total of 253 days of Educational Good Time Credits to be applied to his sentence. BOP records reveal that Kinard has technically received 88 days of Educational Good Time Credits. Specifically, he was awarded 48 days for completing an unspecified program in 1996[12], 35 days for an unspecified class completed at United State Penitentiary Lee County ("USP Lee") in 2002[13], and 5 days for a Microsoft Office Suite class completed at USP Lee in 2007. However, pursuant to statutory restrictions and the lack of a relevant BOP Program Statement exception, Kinard is ultimately not eligible to receive Educational Good Time Credits.

---

[11] Since Kinard's sentence exceeds 10 years, D.C. Code § 24-428(a)(5) applies and Kinard is eligible to receive 10 days of Institutional Good Time per month. 124 months multiplied by 10 days equates to 1,240 days.

[12] Kinard contends that he received his General Educational Development ("GED") diploma at that time.

[13] The BOP Sentence Monitoring Good Time Data record provided with the motion for summary judgment indicates that Kinard enrolled in the class on August 27, 2001, and that he completed the class on February 26, 2002. The record also indicates that Kinard was at USP Lee during this time; however, other records submitted with the motion for summary judgment indicate that Kinard did not arrived at USP Lee until May 21, 2002. Kinard contends that he was housed at Sussex II during the time period that he participated in the aforementioned class.

D.C. Code § 24-429 provides:

(a) Every person whose conduct complies with institutional rules and who demonstrates a desire for self-improvement by successfully completing an academic or vocational program, including special education and Graduate Equivalency Diploma programs, shall earn educational good time credits of no less than 3 days a month and not more than 5 days a month. These credits shall not be awarded until completion of the academic or vocational program.

(b) Educational good time credits authorized by the provisions of this section shall be applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory.

Kinard does not provide the court with any specific information as to why he is eligible for an additional 165 days of Educational Good Time Credits. He merely states that he "has taken classes while here at U.S.P. Lee and completed many and [has] not been awarded any EGT days." (Compl. at 8.) Kinard does provide an inmate education data transcript that reveals that he has taken advantage of a myriad of short-term educational opportunities while at USP Lee. However, he fails to explain why Educational Good Time Credits apply to any of these classes. Indeed, P.S. 5884.02 suggests that, in order to receive any credit, program enrollment must continue anywhere from 7 to 30 months. (P.S. 5884.02 at 4.) Kinard's transcripts reveal that a few of his completed classes lasted approximately three months, but most of the classes lasted only a few weeks. Accordingly, Kinard has failed to adequately support this claim.

Regardless, as previously noted, Educational Good Time Credits are not applied to Kinard's minimum term of imprisonment because he was sentenced pursuant to disqualifying statutes listed in D.C. Code § 24-434[14]. Although the BOP makes an exception for Institutional Good Time

---

[14] D.C. Code § 24-434 states that "[i]nstitutional and educational good time credits shall not be applied to the minimum terms of persons sentenced under §§ 22-3202, 33-501, 33-541, 22-2404(b), or § 22-3204(b)."

- 7 -

Credits, there is no similar exception in P.S. 5884.02 for Educational Good Time Credits. Indeed, P.S. 5884.02 specifically notes that "[i]f an inmate's offense is for . . . violating D.C. Code § 22-3202 . . . or 22-3204(b), [t]hen [Educational Good Time Credits] . . . must not be applied to the minimum term of imprisonment." (P.S. 5884.02 at 8.) Thus, no matter how many Educational Good Time Credits Kinard is awarded, they will not apply to his minimum term, pursuant to D.C. Code § 24-434, and will, therefore, not affect his parole eligibility date. Accordingly, I must grant the motion for summary judgment as to this issue as well.

## C. Industrial and Meritorious Good Time Credits

Kinard seeks 302 days of Meritorious Good Time Credits, pursuant to 18 U.S.C. § 4162 (repealed 1984); however, because Kinard is serving a life sentence, he is not entitled to have such credits applied his sentence.

Industrial and Meritorious Good Times Credits are awarded under 18 U.S.C. § 4162 which provides:

> A prisoner may, in the discretion of the Attorney General, be allowed a deduction from his sentence of not to exceed three days for each month of actual employment in an industry or camp for the first year or any part thereof, and not to exceed five days for each month of any succeeding year or part thereof.
>
> In the discretion of the Attorney General such allowance may also be made to a prisoner performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations.
>
> Such allowance shall be in addition to computation of time for good conduct, and under the same terms and conditions and without regard to length of sentence.

BOP records indicate that Kinard arrived at USP Lee on May 21, 2002 and began working on May 30, 2002. Since that time, Kinard has continuously received either Industrial or Meritorious Good Time Credits. Specifically, Kinard earned Meritorious Good Time from May 30, 2002, when he first began working, until September 3, 2003. Kinard earned Industrial Good Time from

- 8 -

Case 7:07-cv-00601-JLK-mfu   Document 15   Filed 05/16/08   Page 8 of 10   Pageid#: 250

September 4, 2003, based on his employment in UNICOR, the Federal Prison Industries, Inc., until October 9, 2003, when his employment at UNICOR ceased. Kinard again began earning Meritorious Good Time on October 10, 2003. As of March 20, 2008, BOP records indicate that Kinard has received 327 days of Industrial or Meritorious Good Time Credits. However, because Kinard is serving a life sentence, he is not entitled to have those good conduct time credits applied to his sentence pursuant to 18 U.S.C. § 4162. See Escamilla v. Outlaw, Civil Action No. 1:06-CV-81, 2008 WL 686707, at *4 (E.D. Tex. Mar. 10, 2008) (finding that petitioner was not entitled to good conduct time credits pursuant to 18 U.S.C. §§ 4161, 4162 because he was serving a life sentence); see also Robinson v. Clark, 278 F. Supp. 559, 560 (N.D. Ga. 1967) (noting that the language of 18 U.S.C. § 4162 means "without regard to length of sentence" only where a term other than a life sentence, but not a life term, is involved). Accordingly, I must also grant the motion for summary judgment as to this claim.

### D. Statutory Good Time Credits

Kinard finally seeks 2,189 days of Statutory Good Time Credits pursuant to 18 U.S.C. § 4161; however, § 4161 does not apply to indeterminate or life sentences such as Kinard's sentence.

Title 18 U.S.C. § 4161 provides "[e]ach prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence." D.C. sentences are indeterminate by operation; thus, § 4161 is inapplicable to Kinard. See Story v. Rives, 97 F.2d 182 (C.A.D.C. 1938) (the imposition of an indeterminate sentence is compulsory in District, since an "indeterminate sentence" is one for the maximum period imposed by the court, subject to termination by the parole board at any time after serving the minimum period); Fields v. Keohane, 954 F.2d 945,

- 9 -

Case 7:07-cv-00601-JLK-mfu   Document 15   Filed 05/16/08   Page 9 of 10   Pageid#: 251

948 n.3 (3d Cir. 1992) (noting the distinction between determinate federal sentences and indeterminate district sentences). Furthermore, as previously mentioned, Kinard's life sentence precludes him from receiving good time credits pursuant to 18 U.S.C. §§ 4161 or 4162. See Escamilla, 2008 WL 686707, at *4. Accordingly, Kinard's claim that he is entitled to 2,189 days of Statutory Good Time Credits pursuant to 18 U.S.C. § 4161 is without merit and I must grant the motion for summary judgment as to this final claim.[15]

## IV.

Based on the foregoing, I find that Kinard's claims lack sufficient merit to warrant the requested relief. Therefore, I will grant respondent's motion for summary judgment and dismiss Kinard's petition. An appropriate Order will be entered this day.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to counsel of record for respondent and to petitioner.

**ENTER:** This 16th day of May, 2008.

Senior United States District Judge

---

[15] Kinard appears to confuse Statutory and Institutional Good Time Credits. He complains that he received 1,240 Statutory Good Time Credits but that they were "taken away." (Compl. at 5.) As previously noted, Kinard is not eligible to receive Statutory Good Time Credits pursuant to 18 U.S.C. § 4161; thus, he never received 1,240 Statutory Good Time Credits. Kinard is eligible to receive 1,240 Institutional Good Time Credits, however.